**EXHIBIT A**

**PART 4 OF 6**

LDEQ, a written Statement of Position regarding the matter in dispute. The Statement of Position must include, but need not be limited to, any factual data, analysis, or opinion supporting the Applicable Defendant's(s') position and any supporting documentation relied upon by the Applicable Defendant(s).

92.     The United States, after consultation with LDEQ for the Hahnville and Plaquemine Facilities, must serve its Statement of Position within forty-five Days of receiving the Applicable Defendant's(s') Statement of Position. The United States' Statement of Position must include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position will be binding on the Applicable Defendant(s), unless the Applicable Defendant(s) files(file) a motion for judicial review of the dispute in accordance with the following Paragraph.

93.     The Applicable Defendant(s) may seek judicial review of the dispute by filing with the Court and serving on the United States and, with respect to the Hahnville and Plaquemine Facilities, LDEQ, in accordance with Section XVII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five Days of receiving the United States' Statement of Position pursuant to the preceding Paragraph. The motion must contain a written statement of the Applicable Defendant's(s') position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and must set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Decree.

94.     The United States will respond to the Applicable Defendant's(s') motion within the time period allowed by the Local Rules of this Court. LDEQ may participate for the

Hahnville and Plaquemine Facilities. The Applicable Defendant(s) may file a reply memorandum, to the extent permitted by the Local Rules.

95.     Standard of Review. In a formal dispute resolution proceeding under this Section, the Applicable Defendant(s) bear(s) the burden of demonstrating that its(their) position complies with this Consent Decree and the CAA, and that they are entitled to relief under applicable principles of law. The United States, after consultation with LDEQ for the Hahnville and Plaquemine Facilities, reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and the Applicable Defendant(s) reserve(s) the right to argue to the contrary. An administrative record of the dispute will be maintained by EPA and will contain all Statements of Position, including supporting documentation. Upon written request from the Applicable Defendant(s), EPA will provide a copy of the administrative record. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

96.     The invocation of dispute resolution procedures under this Section will not, by itself, extend, postpone, or affect in any way any obligation of the Applicable Defendant(s) under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter will accrue from the first Day of noncompliance, but payment may be stayed pending resolution of the dispute as provided in Paragraph 79. If the Applicable Defendant(s) does(do) not prevail on the disputed issue, stipulated penalties will be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII. INFORMATION COLLECTION AND RETENTION

97.     The United States, and LDEQ for the Hahnville and Plaquemine Facilities, and their representatives, contractors, and consultants, have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

  a.     monitor the progress of activities required under this Consent Decree;

  b.     verify any data or information submitted to the United States or LDEQ in accordance with the terms of this Consent Decree;

  c.     obtain documentary evidence, including photographs and similar data; and

  d.     assess the Applicable Defendant's(s') compliance with this Consent Decree.

98.     Upon request, the Applicable Defendant(s) must provide EPA, and LDEQ for the Hahnville and Plaquemine Facilities, or their authorized representatives, splits of any samples taken by the Applicable Defendant(s). Upon request, EPA and LDEQ must provide the Applicable Defendant(s) split(s) of any samples taken by EPA or LDEQ.

99.     Notwithstanding Section XXI (Termination), and except for data recorded by any video camera required pursuant to Paragraph 22, until three years after the termination of this Consent Decree, the Applicable Defendant(s) must retain, and must instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate to Applicable Defendant's(s') performance of its obligations under this Consent Decree. This information-retention requirement applies regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, or LDEQ for the Hahnville

and Plaquemine Facilities, the Applicable Defendant(s) must provide copies of any documents, records, or other information required to be maintained under this Paragraph. The Applicable Defendant(s) must retain the data recorded by the video cameras required pursuant to Paragraph 22 for one year from the date of recording.

100.   Except for emissions data, the Applicable Defendant(s) may also assert that information required to be provided under this Section is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2. As to any information that the Applicable Defendant(s) seek(s) to protect as CBI, the Applicable Defendant(s) must follow the procedures set forth in 40 C.F.R. Part 2. To assert that any information required to be submitted to LDEQ is entitled to be protected as confidential, the Applicable Defendant(s) must follow the law and procedures as set forth in the applicable provisions of La. R.S. 30:2030; La. R.S. 30:2074.D; and LAC 33:I.Chapter 5.

101.   This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or LDEQ pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Applicable Defendant(s) to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

102.   Definitions. For purposes of this Section XIV, the following definitions apply:

a.   *BTU/scf Flared Gas Requirements* means the requirements found in the following regulations:

(1)   40 C.F.R. § 60.18(c)(3)(ii);

(2)   40 C.F.R. § 63.11(b)(6)(ii); and

(3) The provisions of 40 C.F.R. Part 60, 61, and 63 that require compliance with 40 C.F.R. § 60.18(c)(3)(ii) (for example 40 C.F.R. § 61.349(a)(2)(iii)) or 40 C.F.R. § 63.11(b)(6)(ii) (for example 40 C.F.R. § 63.113(a)(1)(i)) and are applicable requirements in a federally enforceable permit for a Covered Facility as of the Effective Date.

b. *General Flare Requirements* means the requirements found in the following regulations:

(1) 40 C.F.R. § 60.18(c)(1) and 40 C.F.R. § 63.11(b)(4) (both relate to a prohibition on Visible Emissions);

(2) 40 C.F.R. § 60.18(c)(2) and 40 C.F.R. § 63.11(b)(5) (both relate to flame presence);

(3) 40 C.F.R. § 60.18(c)(4) and 40 C.F.R. § 63.11(b)(7) (both relate to exit velocity requirements for Steam-Assisted Flares); and

(4) 40 C.F.R. § 60.18(e) and 40 C.F.R. § 63.11(b)(3) (both relate to operation during emissions venting).

c. *Good Air Pollution Control Practice Requirements* means the requirements found in the following regulations:

(1) 40 C.F.R. § 60.11(d);

(2) 40 C.F.R. § 61.12(c); and

(3) 40 C.F.R. § 63.6(e)(1)(i).

d. *PSD/NNSR Requirements* means the Prevention of Significant Deterioration and Non-Attainment New Source Review requirements found in the following:

(1) 42 U.S.C. § 7475;

(2) 40 C.F.R. §§ 52.21(a)(2)(iii) and 52.21(j)-52.21(r)(5);

(3) 42 U.S.C. §§ 7502(c)(5) and 7503(a-(c);

(4) 40 C.F.R. Part 51, Appendix S, Part IV, Conditions 1-4;

(5) any applicable, federally enforceable state or local regulation that implements, adopts, or incorporates the federal provisions cited in sub-Paragraphs 102.d(1)-(4); and

(6)    any applicable Title V permit requirement that implements, adopts, or incorporates the federal provisions or federally enforceable state provisions cited in sub-Paragraphs 102.d(1)-(5).

e.    *Requirements Related to Monitoring, Operation, and Maintenance According to Flare Design* means the requirements found in the following regulations:

(1)    40 C.F.R. § 60.18(d);

(2)    40 C.F.R. § 63.11(b)(1); and

(3)    The provisions of 40 C.F.R. Part 60, 61, and 63 that require compliance with 40 C.F.R. § 60.18(d) (for example 40 C.F.R. § 61.349(a)(2)(iii)) or 40 C.F.R. § 63.11(b)(1) (for example 40 C.F.R. § 63.113(a)(1)(i)) and are applicable requirements in a federally enforceable permit for a Covered Facility as of the Effective Date.

103.   Entry of this Consent Decree resolves the civil claims of the United States and LDEQ for the violations alleged in the Complaint filed in this action and occurring through the Date of Lodging, and as noted below.

104.   <u>Resolution of Claims for Violating PSD/NNSR Requirements at the Covered Flares</u>. With respect to emissions of VOCs, NOx, and CO from the Covered Flares, entry of this Consent Decree resolves the civil claims of the United States and LDEQ against the Applicable Defendant(s) for violations of the PSD/NNSR Requirements resulting from construction or modification from the date of the pre-Lodging construction or modification through the Date of Lodging.

105.   <u>Resolution of Pre-Lodging Claims at the Covered Flares for Failing to Comply with: (a) BTU/scf Flared Gas Requirements; (b) General Flare Requirements; (c) Good Air Pollution Control Practice Requirements; and (d) Requirements Related to Monitoring, Operation, and Maintenance According to Flare Design</u>. With respect to emissions of VOCs and

HAPs from the Covered Flares, entry of this Consent Decree resolves the civil claims of the United States and LDEQ against the Applicable Defendant(s) for violations of the following requirements from the date those claims accrued until the Date of Lodging: a) BTU/scf Flared Gas Requirements, b) General Flare Requirements, c) Good Air Pollution Control Practice Requirements, and d) Requirements Related to Monitoring, Operation, and Maintenance According to Flare Design.

106.   Resolution of Claims Continuing Post-Lodging for Failing to Comply with Requirements Related to Monitoring, Operation, and Maintenance According to Flare Design for all Covered Flares. With respect to emissions of VOCs and HAPs from the Covered Flares, entry of this Consent Decree resolves the civil claims of the United States and LDEQ against the Applicable Defendant(s) for violations of Requirements Related to Monitoring, Operation, and Maintenance According to Flare Design, but only to the extent that the claims are based on the Defendants' use of too much steam in relation to Vent Gas flow. The resolution in this Paragraph extends through the Effective Date for the Covered Flares.

107.   Resolution of Title V Violations. Entry of this Consent Decree resolves the civil claims of the United States and LDEQ against the Applicable Defendant(s) for the violations of Sections 502(a), 503(c), and 504(a) of the CAA, 42 U.S.C. §§ 7661a(a), 7661b(c), 7661c(a), and of 40 C.F.R. §§ 70.1(b), 70.5(a) and (b), 70.6(a) and (c), and 70.7(b), that are based upon the violations resolved by Paragraphs 103-105 for the time frames set forth in those Paragraphs.

108.   Reservation of Rights - Resolution of Liability in Paragraphs 106-107 can be Rendered Void. Notwithstanding the resolution of liability in Paragraphs 106-107, for the period of time between the Date of Lodging and the post-lodging dates specified in Paragraph 106, those resolutions of liability will be rendered void if the Applicable Defendant(s)

materially fail to comply with any of the obligations and requirements of Section V

(Compliance Requirements) and Section VIII (Emission Credit Generation). To the extent that a

material failure involves a particular Covered Facility, the resolution of liability will be

rendered void only with respect to claims involving that particular Covered Facility. The

resolutions of liability in Paragraphs 106-107 will not be rendered void if the Applicable

Defendant(s), as expeditiously as practicable, remedy such material failure and pay all

stipulated penalties due as a result of such material failure.

109.   The United States and LDEQ reserve all legal and equitable remedies available to

enforce the provisions of this Consent Decree. This Consent Decree will not be construed to

limit the rights of the United States or LDEQ to obtain penalties or injunctive relief under the

Clean Air Act, LEQA, or implementing regulations, or under other federal or state laws,

regulations, or permit conditions, except as specified in Paragraphs 103-106. The United States

and LDEQ further reserve all legal and equitable remedies to address any imminent and

substantial endangerment to the public health or welfare or the environment arising at, or posed

by, the Covered Facilities, whether related to the violations addressed in this Decree or

otherwise.

110.   In any subsequent administrative or judicial proceeding initiated by the United

States or LDEQ for injunctive relief, civil penalties, other appropriate relief relating to a

Covered Facility or Defendant's(s') violations, the Applicable Defendant(s) must not assert, and

may not maintain, any defense or claim based upon the principles of waiver, res judicata,

collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based

upon any contention that the claims raised by the United States or LDEQ in the subsequent

proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 103-106.

111.   This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. The Applicable Defendant(s) is(are) responsible for maintaining compliance with all applicable federal, state, and local laws, regulations, and permits; and the Applicable Defendant's(s') compliance with this Consent Decree is no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and LDEQ do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that the Applicable Defendant's(s') compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, LEQA, La.R.S. 30:2001 *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

112.   This Consent Decree does not limit or affect the rights of the Applicable Defendant(s) or of the United States or LDEQ against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Applicable Defendant(s), except as otherwise provided by law.

113.   This Consent Decree must not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XV. COSTS

114.   The Parties must bear their own costs of this action, including attorneys' fees, except that the United States and LDEQ are entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Applicable Defendant(s).

- 77 -

XVI. 26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

115.   For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section V (Compliance

Requirements), Paragraphs 18-32 and 34-47; Section VII (Permits), Paragraphs 57-58; Section

IX (Reporting Requirements), Paragraphs 63-67; Section XIII (Information Collection and

Retention), Paragraphs 97-100; Section II (Applicability), Paragraph 10; and related Appendices

1.2-1.10 and 2.2 is restitution or required to come into compliance with law.

XVII. NOTICES

116.   Unless otherwise specified in this Decree, whenever notifications, submissions, or

communications are required by this Consent Decree, they must be made in writing and

addressed as follows. Submission by first class mail or courier is required and will be sufficient

to comply with the notice requirements of this Consent Decree; however, for the submission of

technical information or data, the Applicable Defendant(s) must submit the data in electronic

form (*viz.*, an optical disk, hard disk drive (HDD), solid state drive (SSD), or an approved flash

memory device). The email addresses listed below are to permit the submission of additional

electronic courtesy copies.

| | |
|---|---|
| <u>As to the United States by email:</u> | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-11114 |
| | and as to EPA as set forth below. |
| <u>As to the United States by<br>first-class mail:</u> | EES Case Management Unit<br>Environment and Natural Resources Division<br>United States Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-2-1-11114 |

As to the United States Attorney
by first-class mail:

United States Attorney
Eastern District of Louisiana
650 Poydras Street,
Suite 1600
New Orleans, LA  70130


As to EPA by first-class mail:

Director, Air Enforcement Division
Office of Civil Enforcement
United States Environmental Protection Agency
Mail Code 2242-A
Regular Mail: 1200 Pennsylvania Ave, N.W.
William Jefferson Clinton Building
Room 1119
Washington, DC  20460-0001
Express Mail: Use same address but use 20004 as
the zip code

and

Associate Director
Air, Toxics, and Inspections Coordination
Branch (6 EN-A)
United States EPA, Region 6
1201 Elm Street, Suite 500
Dallas, Texas  75270-2102


As to EPA by email:

parrish.robert@epa.gov
foley.patrick@epa.gov
stucky.maria@epa.gov


As to LDEQ:

Celena J. Cage
Administrator, Enforcement Division
Office of Environmental Compliance
Louisiana Department of Environmental Quality
P.O. Box 4312
Baton Rouge, Louisiana  70821-4312

and

Dwana C. King
Oscar Magee
P.O. Box 4302
Office of the Secretary, Legal Affairs Division
Louisiana Department of Environmental Quality
Baton Rouge, Louisiana 70821-4302

As to the Defendants:        Rich A. Wells
Vice President Operations U.S. Gulf Coast
Site Director Texas Operations
The Dow Chemical Company
2301 N. Brazosport Blvd.
Freeport, TX 77541

Carlos J. Moreno
Counsel, U.S. Operations, Regulatory & NA
The Dow Chemical Company
332 SH 332 E (4A016)
Lake Jackson, TX 77566

117.   Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

118.   Notices submitted pursuant to this Section will be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVIII. EFFECTIVE DATE

119.   The Effective Date of this Consent Decree is the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIX. RETENTION OF JURISDICTION

120.   The Court retains jurisdiction over this case until termination of this Consent Decree, for the purpose of: a) resolving disputes arising under this Decree pursuant to Section XII, b) entering orders modifying this Decree pursuant to Section XX, and c) effectuating or enforcing compliance with the terms of this Consent Decree.

## XX. MODIFICATION

121.   Except as otherwise allowed in Paragraphs 14 and 117 (notice recipients and addresses), the terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it will be effective only upon approval by the Court.

122.   Any disputes concerning modification of this Consent Decree must be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 95, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXI. TERMINATION

123.   Before seeking termination of the entire Consent Decree or the set of requirements applicable to one or more Covered Facilities, the Applicable Defendant(s) must:

   a.   Pay the civil penalty and any accrued stipulated penalties as required by this Consent Decree;

   b.   Satisfactorily comply with all provisions of Section V (Compliance Requirements) applicable to the Covered Facility that is subject to the termination request;

   c.   Operate for at least one year in satisfactory compliance with the limitations and standards set forth in Paragraphs 38.e (availability of FGRS compressors), 43.b ($NHV_{cz}$ standard), and 44 (98% Combustion Efficiency) for all of the Covered Flares at the Covered Facility that is subject to the termination request;

   d.   Complete the BEPs in Section VI;

   e.   Apply for and receive federally enforceable permits for the Hahnville and Plaquemine Facilities issued pursuant to LDEQ's consolidated preconstruction and Title V CAA permitting program, which incorporate

the requirements set forth in Paragraph 58.c. The cited basis for the incorporated requirements in the LDEQ's consolidated permit cannot be this Consent Decree and will be the minor NSR authority to issue new limits; and

f.     Apply for and receive federally enforceable Non-Title V permits for the Freeport and Orange Facilities incorporating the requirements set forth in Paragraph 58.c. and submit applications to incorporate the requirements set forth in Paragraph 58.c into a Title V operating permit for the Freeport and Orange Facilities. The cited basis for the incorporated requirements cannot be this Consent Decree and will be the federally enforceable non-Title V permit.

124.   After the Applicable Defendant(s) believe they have satisfied the conditions for termination set forth in the preceding Paragraph for either the entire Consent Decree or for one or more of the Covered Facilities, the Applicable Defendant(s) may submit a request for termination to the United States by certifying such compliance in accordance with the certification language in Paragraph 67 (Request for Termination). In the Request for Termination, the Applicable Defendant(s) must demonstrate that it(they) have satisfied the conditions for termination set forth in the preceding Paragraph, as well as submit all necessary supporting documentation.

125.   Following receipt by the United States, and LDEQ for the Hahnville and Plaquemine Facilities, of the Applicable Defendant's(s') Request for Termination, the Parties will confer informally concerning the request. If the United States, after consultation with LDEQ for the Hahnville and Plaquemine Facilities, agrees that the Decree may be terminated, the Parties will submit, for the Court's approval, a joint stipulation terminating the Decree.

126.   If the United States, after consultation with LDEQ for the Hahnville and Plaquemine Facilities, does not agree that the Decree may be terminated, or if the Applicable Defendant(s) do not receive a written response from the United States within ninety Days of the

Applicable Defendant's(s') submission of the Request for Termination, the Defendants may invoke dispute resolution under Section XII.

## XXII. PUBLIC PARTICIPATION

127.   This Consent Decree will be lodged with the Court for a period of not less than thirty Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. The Applicable Defendant(s) consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Applicable Defendant(s) and LDEQ in writing that it no longer supports entry of the Decree.

128.   The Parties agree and acknowledge that final approval by LDEQ and entry of this Consent Decree are subject to the requirements of La. R.S. 30:2050.7, which provides for: (a) public notice of this Consent Decree in the newspaper of general circulation and the official journal of the parish in which the Hahnville and Plaquemine Facilities are located, (b) an opportunity for public comment for a period of not less than forty-five Days and consideration of any comments received, and (c) concurrence by the State Attorney General. LDEQ reserves the right to withdraw or withhold consent if the comments regarding this Decree disclose facts or considerations that indicate that this Decree is inappropriate, improper, or inadequate.

## XXIII. SIGNATORIES/SERVICE

129.   Each undersigned representative of the Applicable Defendant(s), LDEQ, and the Assistant Attorney General for the Environment and Natural Resources Division of the

- 83 -

Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party or Parties he or she represents to this document.

130.    This Consent Decree may be signed in counterparts, and its validity cannot be challenged on that basis. The Applicable Defendant(s) agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIV. INTEGRATION

131.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXV. FINAL JUDGMENT

132.    Upon approval and entry of this Consent Decree by the Court, this Decree constitutes a final judgment of the Court as to the United States, LDEQ, and the Applicable Defendant(s).

## XXVI. APPENDICES

133.    The Appendices listed in the Tables of Appendices are attached to and part of this

Consent Decree.


Dated and entered this ___ Day of _____, 202_


_____

UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF LOUISIANA

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company et al.* (E.D. LA.).

FOR THE UNITED STATES OF AMERICA:

Jonathan D. Brightbill
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Attorney-in-Charge:          /s/ Kirk W. Koester
Kirk W. Koester
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
202.514.9009 (direct)
202.532.3272 (mobile)
kirk.koester@usdoj.gov

Peter G. Strasser
United States Attorney
Eastern District of Louisiana

- 86 -

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company et al.* (E.D. LA.).

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

SUSAN BODINE

Digitally signed by
SUSAN BODINE
Date: 2020.10.05
10:38:53 -04'00'

Susan Parker Bodine
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

Rosemarie A. Kelley
Director, Office of Civil Enforcement
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

Thomas P. Carroll
Acting Director, Air Enforcement Division
Office of Civil Enforcement
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company et al.* (E.D. LA.).

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION 6:

_Cheryl J. Seager_

Digitally signed by CHERYL SEAGER
DN: c=US, o=U.S. Government, ou=Environmental
Protection Agency, cn=CHERYL SEAGER,
0.9.2342.19200300.100.1.1=68001003651793
Date: 2020.09.21 11:38:55 -05'00'

Cheryl Seager
Director - Compliance Assurance and Enforcement Division
United States Environmental Protection Agency
Region 6
1201 Elm Street, Suite 500
Dallas, Texas  75270-2102

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company, et al.* (E.D. LA.), subject to the public notice and comment requirements of La. R.S. 30:2050.7.

FOR THE LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY:

Lourdes Iturralde
Assistant Secretary
Office of Environmental Compliance
Louisiana Department of Environmental Quality
P.O. Box 4312
Baton Rouge, Louisiana  70821-4312

Dwana C. King, Deputy General Counsel
(La. Bar #20590)
Oscar Magee, Trial Attorney
(La. Bar # 32302)
Office of the Secretary, Legal Affairs Division
Louisiana Department of Environmental Quality
P.O. Box 4302
Baton Rouge, Louisiana  70821-4302
Phone: 225.219.3985
Fax: 225.219.4068
dwana.king@la.gov
oscar.magee@la.gov

- 89 -

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company et al.* (E.D. LA.).

FOR THE DOW CHEMICAL COMPANY:

Rich A. Wells
Vice President Operations U.S. Gulf Coast
Site Director Texas Operations
The Dow Chemical Company
2301 N. Brazosport Blvd.
Freeport, TX 77541

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company et al.* (E.D. LA.).

FOR UNION CARBIDE CORPORATION:

Rich A. Wells
Vice President Operations U.S. Gulf Coast
Site Director Texas Operations
The Dow Chemical Company
2301 N. Brazosport Blvd.
Freeport, TX 77541

THE UNDERSIGNED PARTIES enter into this Consent Decree entered in the matter of the *United States et al. v. The Dow Chemical Company et al.* (E.D. LA.).

FOR PERFORMANCE MATERIALS NA:

Rich A. Wells
Vice President Operations U.S. Gulf Coast
Site Director Texas Operations
The Dow Chemical Company
2301 N. Brazosport Blvd.
Freeport, TX 77541

*United States, et al.*
*v.*
*Dow Chemical Company, et al*

**APPENDICES TO CONSENT DECREE**

# APPENDIX 1.2

**Calculating Combusion Efficiency, Net Heating Value of the Combustion Zone Gas ($Nhv_{cz}$), the Net Heating Value Dilution Parameter ($Nhv_{dil}$), and Flare Tip Velocity (Vtip)**

## APPENDIX 1.2

All abbreviations, constants, and variables are defined in the Key on Page 8 of this Appendix.

Combustion Efficiency Equation:

$$CE \quad = \quad [CO_2]/([CO_2] + [CO] + [OC])$$

where:

$[CO_2]$ = Concentration in volume percent or ppm-meters of carbon dioxide in the combusted gas immediately above the Combustion Zone

$[CO]$ = Concentration in volume percent or ppm-meters of carbon monoxide in the combusted gas immediately above the Combustion Zone

$[OC]$ = Concentration in volume percent or ppm-meters of the sum of all organic carbon compounds in the combusted gas immediately above the Combustion Zone, counting each carbon molecule separately where the concentration of each individual compound is multiplied by the number of carbon atoms it contains before summing (*e.g.*, 0.1 volume percent ethane will count as 0.2 percent OC because ethane has two carbon atoms)

For purposes of using the *CE* equation, the unit of measurement for $CO_2$, CO, and OC must be the same; that is, if "volume percent" is used for one compound, it must be used for all compounds. "Volume percent" cannot be used for one or more compounds and "ppm-meters" for the remainder.

## Step 1: Determine the Net Heating Value of the Vent Gas (NHV$_{vg}$)

The Company must determine the Net Heating Value of the Vent Gas (NHV$_{vg}$) based on composition monitoring data on a 15-minute block average basis according to the following requirements. If the Company monitors separate gas streams that combine to comprise the total vent gas flow to a Covered Flare, the 15-minute block average Net Heating Value will be determined separately for each measurement location according to the following requirements and a flow-weighted average of the gas stream Net Heating Values will be used to determine the 15-minute block average Net Heating Value of the cumulative Vent Gas. The NHV$_{vg}$ 15-minute block averages must be calculated for set 15-minute time periods starting at 12 midnight to 12:15 AM, 12:15 AM to 12:30 AM and so on, concluding at 11:45 PM to midnight.

## Step 1a: Equation or Output to be Used to Determine NHV$_{vg}$ at a Measurement Location

For any gas stream for which the Company complies with Paragraph 23 by collecting compositional analysis data in accordance with the method set forth in 23.a: Equation 1 must be used to determine the NHV$_{vg}$ of a specific sample by summing the Net Heating Value for each

## **APPENDIX 1.2**

individual component by individual component volume fractions. Individual component Net Heating Values are listed in Table 1 of this Appendix.

$$NHV_{vg} = \sum_{i=1}^{n} (x_i \cdot NHV_i) \qquad \textbf{\textit{Equation 1}}$$

**For any gas stream for which the Company complies with Paragraph 23 by collecting direct Net Heating Value monitoring data in accordance with the method set forth in 23.b but for which a Hydrogen Concentration Monitor is not used**: Use the direct output (measured value) of the monitoring system(s) (in BTU/scf) to determine the $NHV_{vg}$ for the sample.

**For any gas stream for which the Company complies with Paragraph 23 by collecting direct Net Heating Value monitoring data in accordance with the method set forth in 23.b and for which a Hydrogen Concentration Monitor is also used:** Equation 2 must be used to determine the $NHV_{vg}$ for each sample measured via the Net Heating Value monitoring system. Where hydrogen concentration data is collected, Equation 2 performs a net correction for the measured heating value of hydrogen since the theoretical Net Heating Value for hydrogen is 274 Btu/scf, but for the purposes of this Consent Decree, a Net Heating Value of 1,212 Btu/scf may be used (1,212 – 274 = 938 BTU/scf).

$$NHV_{vg} = NHV_{measured} + 938x_{H2} \qquad \textbf{\textit{Equation 2}}$$

### **Step 1b:  Calculation Method to be Used in Applying Equation/Output to Determine $NHV_{vg}$**

For any Covered Flare for which the Company complies with Paragraph 23 by using a continuous monitoring system in accordance with the method set forth in 23.a or 23.b: The Company may elect to determine the 15-minute block average $NHV_{vg}$ using either the Feed-Forward Calculation Method or the Direct Calculation Method (both described below). The Company need not elect to use the same methodology at all Covered Flares with a continuous monitoring system; however, for each such Covered Flare, the Company must elect one calculation method that will apply at all times, and use that method for all continuously monitored flare vent streams associated with that Covered Flare. If the Company intends to change the calculation method that applies to a Covered Flare, the Company must notify the EPA 30 days in advance of such a change.

Feed-Forward Calculation Method. When calculating $NHV_{vg}$ for a specific 15-minute block: Use the results from the first sample collected during an event (for periodic Vent Gas flow events) for the first 15-minute block associated with that event.

If the results from the first sample collected during an event (for periodic Vent Gas flow events) are not available until after the second 15-minute block starts, use the results from the first sample collected during an event for the second 15-minute block associated with that event.

## APPENDIX 1.2

1. For all other cases, use the results that are available from the most recent sample prior to the 15-minute block period for that 15-minute block period for all Vent Gas streams. For the purpose of this requirement, use the time that the results become available rather than the time the sample was collected. For example, if a sample is collected at 12:25 AM and the analysis is completed at 12:38 AM, the results are available at 12:38 AM and these results would be used to determine compliance during the 15-minute block period from 12:45 AM to 1:00 AM.

**Direct Calculation Method.** When calculating $NHV_{vg}$ for a specific 15-minute block:

1. If the results from the first sample collected during an event (for periodic Vent Gas flow events) are not available until after the second 15-minute block starts, use the results from the first sample collected during an event for the first 15-minute block associated with that event.

2. For all other cases, use the arithmetic average of all $NHV_{vg}$ measurement data results that become available during a 15-minute block to calculate the 15-minute block average for that period. For the purpose of this requirement, use the time that the results become available rather than the time the sample was collected. For example, if a sample is collected at 12:25 AM and the analysis is completed at 12:38 AM, the results are available at 12:38 AM and these results would be used to determine compliance during the 15-minute block period from 12:30 AM to 12:45 AM.

## Step 2:  Determine Volumetric Flow Rates of Gas Streams

The Company must determine the volumetric flow rate in standard cubic feet (scf) of vent gas, along with the volumetric flow rates (in scf) of any Supplemental Gas, Assist Steam, and Premix Assist Air, over a 15-minute block average basis. The 15-minute block average volumetric flow rates must be calculated for set 15-minute time periods starting at 12 midnight to 12:15 AM, 12:15 AM to 12:30 AM and so on, concluding at 11:45 PM to midnight.

**For any gas streams for which the Company complies with Paragraph 20 by using a monitoring system that directly records volumetric flow rate:** Use the direct output (measured value) of the monitoring system(s) (in scf), as corrected for the temperature and pressure of the system to standard conditions (i.e., a temperature of 20 °C (68 °F) and a pressure of 1 atmosphere) to then calculate the average volumetric flow rate of that gas stream for the 15-minute block period.

**For Vent Gas, Assist Steam, Premix Assist Air gas streams, or purge nitrogen for which the Company complies with Paragraph 20 by using a mass flow monitor to determine volumetric flow rate:** Equation 3 must be used to determine the volumetric flow rate of Vent Gas, Assist Air, or Assist Steam by converting mass flow rate to volumetric flow at standard conditions (i.e., a temperature of 20 °C (68 °F) and a pressure of 1 atmosphere). Equation 3 uses the molecular weight of the gas stream as an input to the equation; therefore, if the Company elects to use a mass flow monitor to determine volumetric flow rate of Vent Gas, the Company

## APPENDIX 1.2

must collect compositional analysis data for such Vent Gas in accordance with the method set forth in 23.a. For assist steam, use a molecular weight of 18 pounds per pound-mole. For assist air, use a molecular weight of 29 pounds per pound-mole. For purge nitrogen, use a molecular weight of 28 pounds per pound-mole. The converted volumetric flow rates at standard conditions from Equation 3 must then be used to calculate the average volumetric flow rate of that gas stream for the 15-minute block period.

$$Q_{vol} = \frac{Q_{mass} * 385.3}{MWt} \qquad \textbf{\textit{Equation 3}}$$

**For gas streams for which the molecular weight of the gas is known and for which the Company complies with Paragraph 20 by using continuous pressure/temperature monitoring system(s):** Use appropriate engineering calculations to determine the average volumetric flow rate of that gas stream for the 15-minute block period. For assist steam, use a molecular weight of 18 pounds per pound-mole. For assist air, use a molecular weight of 29 pounds per pound-mole. For purge nitrogen, use a molecular weight of 28 pounds per pound-mole. For Vent Gas, molecular weight must be determined by collecting compositional analysis data for such Vent Gas in accordance with the method set forth in 21.a.

### Step 3:  Calculate the Net Heating Value of the Combustion Zone Gas (NHV$_{cz}$)

**For any Covered Flare at which:  1) the Feed-Forward Calculation Method is used; 2) gas composition or Net Heating Value monitoring is performed in a location representative of the cumulative vent gas stream; and 3) Supplemental Gas flow additions to the flare are directly monitored:** Equation 4 must be used to determine the 15-minute block average NHV$_{cz}$ based on the 15-minute block average vent gas, supplemental gas, and assist gas flow rates.

$$NHV_{cz} = \frac{(Q_{vg} - Q_{NG2} + Q_{NG1}) * NHV_{vg} + (Q_{NG2} - Q_{NG1}) * NHV_{NG}}{Q_{vg} + Q_s + Q_{a,premix}} \qquad \textbf{\textit{Equation 4}}$$

For the first 15-minute block period of an event, $Q_{NG1}$ must use the volumetric flow value for the current 15-minute block period (i.e. $Q_{NG1} = Q_{NG2}$). $NHV_{NG}$ must be determined using one of the following methods: 1) direct compositional or Net Heating Value monitoring of the natural gas stream in accordance with Step 1; or 2) for purchased (pipeline quality) natural gas streams, the Company may elect to either: a) use annual or more frequent grab sampling at any one representative location; or b) assume a Net Heating Value of 920 BTU/scf.

**For all other Covered Flares:** Equation 5 must be used to determine the 15-minute block average NHV$_{cz}$ based on the 15-minute block average vent gas and assist gas flow rates. For periods when there is no Assist Steam flow or Premix Assist Air flow, NHV$_{cz}$ = NHV$_{vg}$.